IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:17cr509-MHT |
| | ) | (WO) |
| WILBUR BERNARD WILLIS | ) | |

OPINION AND ORDER

Defendant Wilbur Bernard Willis is before the court for sentencing after pleading guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). In addition to the March 2017 incident to which he pled guilty, his plea agreement stipulates that three other felon-in-possession incidents in 2016 constitute relevant conduct for his sentence.

At a sentencing hearing on November 13, 2018, this court found that Willis's United States Sentencing Guidelines range is 46-57 months of prison, and one to three years of supervised release. The government moved for an upward departure or variance because Willis's relevant conduct includes *four* separate incidents of being a felon in possession of a firearm, two of which were

violent. Most notably, on June 2, 2016, he shot a firearm at a vehicle occupied by his wife and another person, and, on December 10, 2016, he brandished a firearm at two victims. By contrast, Willis requests a downward variance, essentially arguing that his culpability is mitigated by his depression, substance-abuse problems, intellectual disability, and other possible mental disorders.[1]

This court has held that where there is a "reasonable basis to believe" that a defendant's mental disorder--including a substance-abuse disorder--"contributed to the conduct underlying his or her conviction," the court should order a mental-health evaluation. *United States v. Gamble*, 2018 WL 3812241, at *1 (M.D. Ala. Aug. 10, 2018); *see also United States v. Mosley*, 277 F. Supp. 3d 1294 (M.D. Ala. 2017) (discussing substance-abuse disorders in further detail). Such an evaluation is needed to fashion an appropriate sentence,

---

1. As used here and throughout this opinion and order, the term "mental disorder" includes an intellectual disability. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 33 (5th ed. 2013) (listing intellectual disability as a mental disorder).

2

because it helps determine (1) how a defendant's mental disorder(s) may mitigate his or her *culpability* for the offense conduct; and (2) what type of *treatment*, if any, the defendant should receive during incarceration and/or supervised release. *See id.*[2] The mental-health evaluation should, therefore, focus on the dual, overlapping issues of what role, if any, the defendant's mental disorder(s) played in his or her charged conduct (culpability), and what treatment is recommended for the disorder(s) in light of his or her individual characteristics and history (treatment). *See id.*[3]

Here there is strong reason to believe that Willis's apparent substance-abuse problems, as well as his possible depression, intellectual disability and potentially other

---

2. By "culpability" the court does not mean whether a defendant had a defense such as insanity, or whether a defendant's action was not "voluntary" or committed with the requisite mens rea; rather, the court means "culpability" in the sense of possible mitigation.

3. In addition to helping determine appropriate treatment, the recommendation may aid the court in identifying other conditions of supervised release and Bureau of Prisons (BOP) programs during incarceration that will best rehabilitate the defendant and assist his or her re-entry into society.

mental disorders, contributed to the conduct for which he is being sentenced. Willis underwent a forensic psychological evaluation by Dr. Catherine Boyer on June 26 and July 25, 2018. Dr. Boyer concluded that Willis has long suffered from depression, has had a significant substance-abuse problem for most of his adult life, has borderline intellectual functioning, and demonstrates symptoms of posttraumatic stress disorder (PTSD).

As to Willis's apparent intellectual disability, an intelligence assessment administered by Dr. Boyer yielded a Full Scale-4 IQ score of 70, which would place him in the second percentile. Willis appears to have started receiving special education in sixth grade, and scored around the first percentile on the Otis-Lennon School Ability Test when he was 10 and 16 years old.

As to Willis's depression and possible PTSD, Dr. Boyer reports that Willis was kidnapped at gunpoint when he was around 17 years old, which led to sleeping problems. The report also highlights that Willis has lost several family

members and friends to violence, and saw rapes, stabbings, and killings during his last term of imprisonment.

As to his substance-abuse problem, the Presentence Investigation Report indicates that that, prior to his arrest, Willis drank roughly a case of beer per day, as well as an unspecified amount of liquor. Willis said that, after being released from prison in 2009, he started using prescription pain pills that he obtained on the street, and continued using them up until approximately a year ago. In addition to his physiological addiction, Willis likely also has used substances to self-medicate for depression, according to Dr. Boyer.

Willis's criminal conduct appears to be directly connected to his substance abuse. Many of his prior arrests and convictions are for drug possession and driving under the influence. Willis admits that he was in a "near constant state of drunkenness" during the spate of felon-in-possession incidents in 2016 and 2017 for which this court is currently sentencing him. Defendant Sentencing Memorandum (doc. no. 45) at 6. When the police

5

searched Willis during his March 7, 2017, arrest, they found pills on him, in addition to a firearm.  And Willis was intoxicated when he fired the gun at the vehicle occupied by his wife on June 2, 2016, according to the government.  Finally, the Presentence Investigation Report states that Willis admits that alcohol makes him angry, and that he has gotten into physical altercations while under the influence.

18 U.S.C. § 3552(b) authorizes the court to order that the mental-health study be done by the Bureau of Prisons (BOP) upon the finding of a "compelling reason" or where there are no adequate professional resources available in the local community to perform the study.  In this case, the court seeks a comprehensive, longitudinal evaluation of Willis's mental health, including whether he suffers from a substance-abuse disorder, depression, PTSD, intellectual disability, and/or any other mental disorders.  No locally available resources could provide such a thorough evaluation.

Also, because Willis does not oppose being transported, and committed, to a BOP facility for the mental-health evaluation, no due-process concerns are raised. *See Mosley*, 277 F. Supp. 3d at 1299-1300.

***

There is reason to believe that Willis's offense conduct was at least partly driven by his possible mental-disorder(s), including potentially his depression, PTSD, substance abuse disorder, and/or intellectual disability. While Dr. Boyer's report identifies possible mental disorders, the court needs a more precise and in-depth assessment, which specifically analyzes the relationship between his disorder(s) and criminal conduct. Therefore, in order to ensure that Willis is not inappropriately punished for having a mental disorder, to assess accurately his culpability for the offense, and to mete out any necessary rehabilitative treatment, it is ORDERED as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 3552(b), the United States Marshal for this district shall immediately remove defendant Wilbur Bernard Willis to the custody of the warden of an appropriate institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution. The statutory time period for the examination shall commence on the day defendant Willis arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 3552(b), the examining psychiatrist(s) or psychologist(s) shall evaluate defendant Willis's psychological condition for the purposes of sentencing and shall include their findings in a report to be presented to this court.

(a) To assist the court in assessing defendant Willis's culpability--that is, as a mitigating factor---the report shall discuss his mental-health history and

characteristics. In particular, the report shall address (i) whether he suffers from a substance-abuse disorder, depression, PTSD, intellectual disability, or any other mental disorder(s), and if so, which one(s); (ii) if he has a substance-abuse disorder as well as another mental disorder, how, if at all, the other mental disorder(s) relate to or interact with his substance-abuse disorder, including whether the other mental disorder(s) may be viewed as having caused, led to, or contributed to his substance-abuse disorder; (iii) the effect, if any, of defendant Willis's repeated incarcerations on his substance-abuse disorder and any other mental disorder(s); (iv) what role, if any, his substance-abuse disorder, and/or other mental disorder(s) played in his commission of the four separate incidents for which he is now being sentenced; and (v) how his substance-abuse disorder and/or other mental disorder(s) could impact his ability to refrain from using alcohol and/or illegal substances, to refrain from engaging in future criminal activity, and to meet other conditions of supervision.

**(b)** In addition, the report shall provide recommendations for treatment, programs, and supportive services to be provided to defendant Willis while in prison and on supervised release. The report should address his personal characteristics, history, and circumstances; his mental health; which treatment modalities, treatment settings, and supportive or other services are likely to be most effective in helping him to deal with the disorders he may have, to refrain from using alcohol or illegal drugs, committing other crimes, or violating other conditions of supervised release, and to learn to respond to life stressors without resorting to illegal activities; what specific BOP programs are recommended, and why, in the event that he is incarcerated for an extended period of time, *see* https://www.bop.gov/inmates/custody_and_care/docs/20170914_BOP_National_Program_Catalog.pdf (describing BOP programs); and whether, assuming sincere and good-faith efforts on the part of defendant Willis, relapse is to be reasonably expected. Among other issues, the study shall address

whether there is any medication that can be used in conjunction with any other treatment to address his possible substance-abuse disorder and/or other disorder(s), and what, if anything, can be done to break his cycle of criminal activity, apart from incarceration.

(3) Finally, the study shall discuss any other matters the BOP believes are pertinent to the sentencing factors set forth in 18 U.S.C. § 3553(a).

DONE, this the 15th day of November, 2018.

                                   /s/ Myron H. Thompson
                                   UNITED STATES DISTRICT JUDGE